UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMERICAN CIVIL LIBERTIES UNION,
*et al.*

           Plaintiffs,                      1:09cv42 (LO/TRJ)

v.

ERIC HOLDER, Attorney General
of the United States, *et al.*

           Defendants.

## MEMORANDUM OF TAXPAYERS AGAINST FRAUD EDUCATION FUND AS *AMICUS CURIAE* IN SUPPORT OF A MOTION TO DISMISS FILED BY THE UNITED STATES OF AMERICA

    **NOW INTO COURT**, through undersigned counsel, comes Taxpayers Against Fraud Education Fund ("TAFEF"), who respectfully submits this Memorandum as *Amicus Curiae* in Support of a Motion to Dismiss filed by the United States Department of Justice ("USDOJ" or "Government") at R.Doc. # 19 for the following reasons:

### Introduction

    *Amicus Curiae* TAFEF is a nonprofit, tax exempt organization dedicated to preserving effective anti-fraud legislation at the federal and state levels. The organization has worked to publicize the *qui tam* provisions of the Federal False Claims Act (the "Act"), has participated in litigation as a *qui tam* relator and as *amicus curiae*, and has provided congressional testimony regarding ways to improve the Act. TAFEF has a profound interest in ensuring that the Act is appropriately interpreted and applied. TAFEF strongly supports vigorous enforcement of the Act, based on its many years of work focused on the proper interpretation of the Act.

A more detailed description of TAFEF can be found in the Motion for Leave to file the Memorandum as *amicus curiae*.

## Argument

### A. The Plaintiffs Do Not Have Standing To Assert Challenges On Behalf Of Relators Who File Suits Under The Federal False Claims Act

On the face of the Complaint filed by the American Civil Liberties Union ("ACLU"), OMB Watch, and the Government Accountability Project ("GAP"), the Plaintiffs have never and do not currently represent the interests of relators in False Claims Act litigation. The Plaintiffs have not identified any specific federal False Claims Act case in which ACLU, OMB Watch, or GAP has participated, either a party or as counsel of record for a relator. In fact, while GAP purports to advise whistleblowers, it freely states at ¶ 38 of the Complaint that "in its role as a legal adviser to whistleblowers, [GAP] urges whistleblowers not to file suit under the FCA unless financial recovery is their only goal." The Complaint is devoid of any statements regarding the Plaintiffs' representative capacity to confer standing to challenge the provisions of the FCA.

Absent some standing by ACLU, OMB Watch, or GAP with regard to specific relators, who have been specifically restrained from exercising First Amendment rights, TAFEF adopts those arguments of the Government as set forth in its Memorandum in Support of its Motion to Dismiss at R. Doc. #20. TAFEF therefore contends that the Plaintiffs have no standing to challenge the FCA on behalf of "theoretical" relators for the same reasons and based on the same authorities as advanced by the Government and therefore, the Complaint should be dismissed.

## B. Plaintiffs Mischaracterize The False Claims Act's Seal Provision As A "Gag" On Relators

The United States Supreme Court has held that a relator's right and Article III standing to bring a *qui tam* suit and to share in the Government's recovery lie in the relator's status as a partial assignee of the Government's damage claim. As the Supreme Court stated, an "adequate basis for the relator's suit for his bounty is to be found in a doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. The FCA can reasonably be regarded as effecting a partial assignment of the government's damages claimed...[M]ore precisely, we are asserting that a *qui tam* relator is, in effect, suing as a partial assignee of the United States." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773-774, 120 S. Ct. 1858, 1864 (2000). The Supreme Court referenced the FCA's unique filing requirements, noting that in order to institute an action, the relator "must deliver a copy of the Complaint, and any supporting evidence, to the government, which then has 60 days to intervene in the action." *Vermont,* 529 U.S. at 769 (emphasis added).

The False Claims Act requires that relators initiating *qui tam* actions file their complaints *in camera*, that those complaints remain under seal for at least 60 days, and that those complaints not be served on the defendant until the court so orders. The Plaintiffs in this case have mischaracterized this seal provision as a "gag" that infringes on relators' First Amendment rights. In so doing, the Plaintiffs fail to acknowledge that, although the provisions of the False Claims Act provide for a monetary incentive for relators to file *qui tam* lawsuits, those provisions are not the exclusive means by which a relator can bring information to the Government in order to protect the public fisc or advance some compelling public interest. A whistleblower is perfectly free to deposit his/her information with the press, or an appropriate governmental

agency (e.g., the F.B.I., the United States Department of Justice, a local United States Attorney's Office, an Agency's Inspector General, etc.) at will.

Importantly, Congress felt that "an effective vehicle for private individuals to disclose fraud is necessary both for meaningful fraud deterrence and for breaking the current 'conspiracy of silence' among Government contractor employees." 1986 U.S.C.C.A.N. 5266, 5279. The *qui tam* provisions and incentives of the False Claims Act are just such a vehicle. Indeed, since the 1986 amendments to the Act, more than $24 billion dollars have been recovered and, to date, more than 80% of cases prosecuted by the Government have been filed by relators.[1]

Further, far from "gagging" relators, the False Claims Act's requirement that relators file their complaints under seal serve several important functions that benefit relators as well as the Government, and which are necessary to carry out the Congressional intent of protecting the public fisc and encouraging relators to come forward with matters of importance to the Government.

As an incentive for relators to file meritorious *qui tam* actions, section §3730(d) of the False Claims Act confers an award or bounty, but requires compliance with certain statutory requirements, including the seal provision, as a condition to the receipt of that award. As the Government has stated in its Memorandum, compliance with conditions to receive monies from the Government is a *sine qua non* to receipt of those monies. Thus, in order for a relator to become vested with a right to receive a bounty from the government under the False Claims Act, he/she must comply with the Act's statutory requirements. *See U.S. ex rel. Texas Portland Cement v. McCord*, 233 U.S. 157, 162-163, 34 S. Ct. 550, 552-553 (1914); *see also Reich versus Dow Badische Co.*, 575 F. 2d. 363, 367-70 (2nd Cir. 1978). That said, relators who bring actions under the False Claims Act always do so voluntarily and are not prohibited from breaking the

---

[1] See DOJ statistics, which can be found at http://www.taf.org/FCA-stats-DoJ-2008.pdf.

seal and disclosing information regarding their complaints to the press, to the public in general, or to whomever they wish.[2] However, should a relator choose to violate the FCA's seal provision, the penalty is forfeiture or reduction of any monetary award the relator would have been entitled to receive, had the procedures of the False Claims Act been followed.

For example, in *U.S. ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2nd Cir. 1995), the Second Circuit Court of Appeals dealt with the dismissal of a False Claims Act case, based on the relator's failure to follow the seal requirements by discussing the Complaint with a local reporter. The district court dismissed the action without prejudice, but the court of appeals concluded that dismissal with prejudice was the only available remedy for the relator's violation of the False Claims Act's seal provision. In dismissing the *qui tam* complaint with prejudice, the Second Circuit held that "the [relator's] failure to comply with the service and filing requirements incurably frustrated all these interests....[T]he case for dismissal of the [relator's] *qui tam* claims with prejudice is supported not only by policy considerations and the record presented on this appeal, but also by pertinent authority." *Id.* at 999; *see also US ex rel. Lujan v. Hughes Aircraft*, 67 F.3d 242 (9th Cir 1995).

This Court has dealt with a similar matter. In *U.S. ex rel. Erickson v. American Institute of Biological Sci.*, 716 F. Supp. 908 (E.D. Va. 1989), citing relevant authority, noted that when a statute confers or creates a special cause of action and calls upon the litigants to conduct that action with certain compliance with procedural requirements, dismissal is warranted when those requirements are NOT followed. In reliance on such authority, the Court decided that dismissal of the *qui tam* complaint is warranted when a relator's "failure to comply with the filing and

---

[2] The Government correctly notes in its brief, R.Doc# 20 at p. 10, that a relator may speak publicly about the underlying facts of a case without technically violating the seal, as long as the existence of the *qui tam* action or the existence of the *qui tam* investigation is not disclosed. However, as a practical matter, such information could jeopardize the investigation, and therefore the ultimate success of a case upon which the relator's bounty would be computed.

service provisions irreversibly frustrates the congressional goals underlying those provisions." *Id.* at 912; *see also United States ex rel. Windsor v. Dyncorp*, 895 F.Supp. 844, 848 (E.D. Va. 1995).

In sum, Congress created the unique requirements of the False Claims Act to effect a partial assignment of the Government's recovery to the relator. By voluntarily invoking the provisions of the False Claims Act and filing the Complaint pursuant to the Act, relators agree to maintain the integrity of the seal during the pendency of the Government's investigation, in exchange for a share of any recovery the Government receives. Once the seal is lifted, the relator is then free to speak to whomever he/she chooses without fear of losing that reward, as then the Government has concluded its investigation and has determined whether to intervene in the matter or not. The purposes of the seal have therefore been satisfied at that point. However, a relator can choose to violate the seal, even though he/she does so under penalty of dismissal of his/her claim and his/her right to a reward. Therefore, there is no "gag" in place and the relief requested by the Plaintiffs should be denied.

### C. The False Claims Act's Temporary and Limited Seal Provision Does Not Violate the Separation of Powers Doctrine.

Moreover, as the statute explicitly provides, the initial seal period is not one of unlimited duration. 31 USC §3730(b)(2) clearly states that the initial seal period is only 60 days. Section 3730(b)(3) provides that the U. S. Government may, upon a finding of "good cause," move the court for extensions of the time period during which the relator's complaint remains under seal. Thus the act itself places the extent or duration of the seal under the direct supervision and auspices of an Article III court.

Yet, the Plaintiffs' Complaint claims that the FCA's seal provisions violate the separation of powers doctrine. Specifically, the Complaint states that the "FCA's secrecy scheme infringes

on a Court's inherent power to determine on an individualized basis whether a case or Complaint should be sealed." *See* Complaint ¶7. The Plaintiffs are mistaken. The False Claims Act was last amended in 1986, and the legislative history of those amendments clearly demonstrates congressional intent to confer upon an Article III judge the discretion, on a case-by-case basis, to determine whether to extend the seal, stating:

> Subsection (b)(3) of §3730 establishes that the government may petition the Court for extensions of both the 60-day evaluatory period and the time during which the Complaint remains under seal. Extensions will be granted, however, only upon a showing of 'good cause'. The Committee intends the Court weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation.

S. Rep. 99-345 at p. 24, also cited at 1986 U.S.C.C.A.N. 5266, 5289. Thus, by the express terms of the statute itself, and the abundantly clear expression of Congressional intent contained in the Senate Report to the 1986 amendments, it is the presiding judge who determines whether or not the seal should remain in place.

In sum, judicial oversight over both the existence and duration of the seal provides the level of supervision and "individualized" evaluation by an Article III judge that prevents the Government from having seals in place that are unlimited in duration and scope. Since the False Claims Act already specifically provides for the "individualized basis" relief that the Plaintiffs seek, the Plaintiffs' Complaint fails to state a claim and must fail.

### D. The False Claims Act Does Not Prohibit A Relator From Requesting That The Seal Be Lifted Or Otherwise Modified

A relator, having standing as a litigant and partial assignee of the Government's claim, may move the court for any number of reasons to lift or terminate the seal on his/her complaint. This again squarely places the existence of the seal, its duration, and its scope under the auspices of an Article III judge, who can determine the merits of the relator's request.

For example, should a relator determine during the pendency of the Government's investigation that a serious public safety threat exists which needs to be remedied by disclosure of information to a governmental body or to the public, the relator may seek leave of court to have the seal lifted or modified, so that he/she can apprise those interested individuals or entities with said information. Should the relator move the court to modify the seal, the government would be given the opportunity to be heard on such a motion and the presiding judge could fashion a remedy that balances the relator's level of concern against any governmental interest in maintaining the seal.[3] In such circumstances, it is always the court that weighs whether or not to modify the seal. This provision allows the relator to preserve his/her status as an assignee of an eventual reward from any recovery by the Government, as he/she can first seek the permission of an Article III judge and avoid potentially violating the FCA's seal provision. The Plaintiffs' failure to recognize this basic concept at the heart of the individualized procedures inherent in the False Claims Act renders their separation of powers claim meritless.

In addition, the Government routinely seeks the position/assent of the relator prior to making any request for extension of the seal and reflects the same in any memorandum or motion to that effect. This additional layer of involvement upon the impending expiration of each seal period constitutes yet another voluntary invocation and agreement by the relator that he/she will maintain the provisions of the seal, while giving the relator an opportunity to be heard when the Government seeks to demonstrate "good cause" for a seal extension to an Article III judge. Since the relator remains an active participant in the maintenance of the seal in every case, his/her constitutional rights are not infringed by the FCA's seal provision. Any

---

[3] See footnote 2, *supra* regarding the scope of the seal itself. Even if a disclosure may not technically be a violation of the seal, a relator can act out of an abundance of caution by filing a motion with the presiding judge and seeking the court's guidance, prior to making a disclosure. The fact that the Act allows for this proactive approach further demonstrates that the relator is not unconstitutionally restrained.

representation by Plaintiffs to the contrary is both legally and factually false. In this regard, TAFEF adopts the arguments of the Government at R. Doc# 20.

### E. The FCA's Seal Provision Protects Relators From Retaliation, Coercion And Threats Of Intimidation

TAFEF submits that the FCA's seal provisions serve as an important non-monetary incentive for relators to bring claims to the attention of the Government, pursuant to the False Claims Act. Many of the most significant False Claims Act cases brought since the 1986 amendments were enacted have been filed by *qui tam* relators who were "insiders" who successfully blew the whistle on their employers' fraud. These relators faced potential and in many cases real retaliation, intimidation and coercion from their employers. The above-referenced 1986 Senate Report reflects this potential risk to relators, stating that "in many cases, individuals knowing of fraud are unwilling to make disclosures in light of potential personal and financial risk as well as a lack of confidence in the government's ability to remedy the problem." S. Rep. 99-345 at p. 25.

Consequently, relators can now take some measure of comfort in the fact that the False Claims Act contains a private right of action for damages and subjects employers to liability for restraining or preventing relators from investigating, preparing, and/or filing a False Claims Act case. *See* 31 USC §3730(h). However, this private right of action is only remedial in nature, and only compensates employees after they have experienced such retaliation. In contrast, the FCA's seal provision serves as a means to prevent retaliation against employees as it protects the identity of relators while the Government is conducting its investigation.

### Conclusion

WHEREFORE, TAFEF respectfully submits this *amicus curiae* Memorandum in Support of the Government's Motion to Dismiss. As a strong proponent of the Act itself and relators who

bring *qui tam* suits, TAFEF respectfully urges the Court to reject Plaintiffs' baseless challenge to the most effective tool in the Government's arsenal to combat fraud, waste, and abuse.

### Request for Argument

*Amicus Curiae* TAFEF requests time to be heard at oral argument on June 12, 2009.

Respectfully submitted,

*[signature]*

Zachary A. Kitts
Virginia Bar # 47052
Counsel for *Amicus Curiae* TAFEF
Cook & Kitts, PLLC
3554 Chain Bridge Road, Suite 402
Fairfax, Virginia 22030
Phone: 703-865-7480
Fax: 703-434-3510
Email: zkitts@cookkitts.com

Joseph E.B. White, Esq.
Not Admitted in Virginia
Cleveland Lawrence III, Esq.
VA Bar # 47076 (Not admitted to E.D. Va.)
Taxpayers Against Fraud Education Fund
1220 19th Street, N.W.
Washington D.C. 20036
Phone: 202-296-4826
Fax: 202-496-4826
Email: jwhite@taf.org
Email: clawrence@taf.org

J. Marc Vezina, Esq.
Not Admitted in Virginia
Vezina & Gattuso, LLC
401 Weyer Street
P.O. Box 461
Gretna, LA 70054
Ph: 504-368-5223
Fax: 504-361-3624
Email: jmv@vezinagattuso.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2009, I will electronically file the foregoing *Amicus Curiae* Memorandum with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Richard W. Sponseller
Assistant United States Attorney
VSB # 39402
Attorney for United States Defendants Fernando Galindo and Hon. Eric Holder
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3898
Email: Richard.Sponseller@usdoj.gov


Rebecca K. Glenberg
VSB # 44099
American Civil Liberties Union of
Virginia Foundation, Inc.
Counsel for Plaintiffs
530 E. Main Street, Suite 310
Richmond, VA 23219
Phone: 804-644-8080
Fax: 804-649-2733
Email: rglenberg@acluva.org

And I further certify that I will serve by U.S. Mail, Postage Prepaid, true and correct copies of the foregoing and the NEF of the same document to the following non-filing users at the physical addresses indicated and will also serve copies of the same documents, in pdf format, by electronic mail to the indicated email addresses of the following non-filing users:

Christopher A. Hansen
chansen@aclu.org
Benjamin Wizner
bwizner@aclu.org

Jameel Jaffer
jjaffer@aclu.org
Mark Ladov
mladov@aclu.org

Counsel for Plaintiffs
American Civil Liberties Union Foundation, OMB Watch, and
Government Accountability Project
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2606

Respectfully Submitted,

Zachary A. Kitts
Virginia Bar # 47052
Counsel for *Amicus Curiae* TAFEF
COOK & KITTS, PLLC
3554 Chain Bridge Road, Suite 402
Fairfax, Virginia 22030
Phone: 703-865-7480
Fax:  703-434-3510
Email:  zkitts@cookkitts.com