

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

AMERICAN CIVIL LIBERTIES UNION )
*et al.*, )
)
Plaintiffs, )
)
v. ) Civil Action No.: 1:09-cv-042
)
ERIC HOLDER, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule

12(b)(6) (Dkt. No. 19). On July 10, 2009, the Court heard oral argument on this motion and took

the matter under advisement. For the reasons explained below, the Court hereby grants

Defendants' Motion and dismisses the complaint.

### I.     Background.

This case is a tripartite attack on the constitutionality of the seal provisions of the False

Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, brought by Plaintiff American Civil Liberties

Union (ACLU), Plaintiff OMB Watch (OMB Watch), and Plaintiff Government Accountability

Project (GAP), collectively ("plaintiffs"). Plaintiff ACLU is a "nationwide, non-profit, non-

partisan organization . . . dedicated to the constitutional principles of liberty and equality." The

ACLU brings suit "on its own behalf and on behalf of its members." Plaintiff OMB Watch states

that its "mission is to increase government transparency and accountability; to ensure sound,

equitable regulatory and budgetary processes and policies; and to protect and promote active

citizen participation in democracy." Plaintiff Government Accountability Project (GAP) is a "30

year old nonprofit public interest group that promotes government and corporate accountability by advancing occupational free speech, defending whistle blowers, and empowering citizen activists." Defendants are United States Attorney General Eric Holder, in his official capacity, and Fernando Galindo, Clerk of Court for the Eastern District of Virginia, in his official capacity.

The FCA is one of the government's litigative tools in combating fraud in government programs. Congress originally enacted the FCA in 1863 in response to rampant fraud in contracts awarded during the Civil War, and amended it substantially in 1986. The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented" to the government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). The government may bring a civil FCA action, or a private person – known as a "relator" – may bring a civil FCA action under the *qui tam* provisions of the Act. 31 U.S.C. § 3730(b)(1). If the relator initiates the action, the complaint must be filed *in camera* and under seal. Section 3730(b)(2) of the FCA provides that a "complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." Furthermore, the relator must serve "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" on the government. *Id.* During those sixty days the government investigates the case and determines whether to intervene in the action. *U.S. ex rel. Health Outcomes Technologies v. Hallmark Health System, Inc.*, 349 F. Supp. 2d 170, 173 (D. Mass. 2004). Before the conclusion of this sixty-day period, the government must either inform the court whether it is intervening, or "for good cause shown, move the court for extensions of the time during which the complaint remains under seal." 31 U.S.C. § 3730(b)(3). Such motions may be supported by affidavits or other submissions *in camera. Id.*

Together, Sections 3730(b)(2) and (b)(3) are known as the "seal provisions." The filing and service requirements contained in these provisions are mandatory, and during the initial sixty-day period the public has no knowledge that a civil action has been filed. After completion of the government's investigation and notice of its intervention decision, the seal is lifted and the qui tam complaint becomes public.

Plaintiffs bring three distinct challenges to the seal provisions, 31 U.S.C. §§ 3730(b)(2) and (b)(3). First, they argue that the provisions are facially unconstitutional because they "deny access to information of paramount public interest" and thus violate the public's First Amendment right of access to information. Second, plaintiffs argue that the provisions are "content-based" restrictions that gag the relator from speaking about the case, in violation of the relator's First Amendment rights. Finally, they argue that the seal provisions "infringe[] on a court's inherent authority to decide on a case-by-case basis whether a particular FCA action should be hidden from public scrutiny and thus violate[] the separation of powers." Plaintiffs seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, as well as injunctive relief.

**II.    Discussion.**

**A.    Right of access.**

1. <u>Plaintiffs are entitled to bring a facial constitutional challenge to the FCA.</u>

A threshold issue is whether plaintiffs may bring a facial constitutional challenge to the FCA's seal provisions. The government argues that to maintain a facial challenge, plaintiffs must show that the statute is unconstitutional *in every application*. *See National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998); *see also Rust v. Sullivan*, 500 U.S. 173, 183 (1991) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount

3

successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Plaintiffs' argument, in part, is that because the sixty-day mandatory seal is imposed in every FCA case – without exception – the seal provisions *are* unconstitutional in every application. In other words, there are "no set of circumstances . . . under which the [seal provision] would be valid" and a facial challenge is appropriate. *Rust*, 500 U.S. at 183. The Court agrees with plaintiffs, but bears in mind that facial invalidation is "manifestly strong medicine," to be employed only as "a last resort." *Finley*, 524 U.S. at 580.

The government argues that the Supreme Court's opinion in *Los Angeles Police Department v. United Reporting* precludes a facial attack based upon a claimed right of access to information in the possession of the government. 528 U.S. 32 (1999). In *United Reporting*, a California statute required a person seeking access to a database containing addresses of arrestees to certify that the addresses would not be used to sell products or services. A private publishing company brought suit, contending that the statute burdened commercial speech in violation of the First Amendment. *Id.* at 34-37. The Supreme Court rejected this contention, holding that the statute was not subject to a facial challenge because it did not "prohibit a speaker from conveying information that the speaker already possesses." *Id.* at 40.

Similarly, in *Fisher v. King* the Fourth Circuit applied *United Reporting* and rejected a facial challenge to the Virginia Freedom of Information Act (VFOIA), under which a prisoner had been denied access to an original tape recording of a 911 call played at his trial. *Fisher*, 232 F.3d 391 (4th Cir. 2000). The prisoner argued that the VFOIA's Prisoner Exclusion Provision violated the First Amendment by restricting prisoner access to information to which the general public had access. *Id.* at 398. The Fourth Circuit held that the "VFOIA is an access statute, and therefore, Fisher cannot maintain a facial challenge under the First Amendment." *Id.* at 395.

Under *United Reporting* and *Fisher*, it appears that a facial constitutional challenge may not be sustained against an "access statute," *i.e.*, a statute regulating access to information in the government's possession. However, the FCA is fundamentally not an "access statute." The California statute in *United Reporting* was "simply a law regulating access to information in the hands of the police department." 528 U.S. at 40. The FCA's seal provisions, by contrast, do not regulate access to information in the hands of any law enforcement agency. Rather, they temporarily limit public access to a complaint, which is a court pleading. Indeed, the qui tam complaint and the information it contains is not possessed by any branch of the government until the relator files the complaint *in camera* with a court. As such, the FCA does not grant access to government information; it restricts access to a court filing for a limited duration. Plaintiffs' challenge therefore is essentially a constitutional claim for a public "right of access" to court documents under the First Amendment. This implicates a separate line of cases addressing the right of access, which supplies the proper legal framework here.

2. There is no First Amendment "right of access" to a sealed qui tam complaint.

The core issue then is whether the First Amendment grants a "right of access" to sealed qui tam complaints. "The first question in any case involving a denial of public access to judicial proceedings or materials is whether the First Amendment right of access extends to the type of proceeding or materials to which access is sought." *In re Washington Post*, 807 F.2d 383, 388 (4th Cir. 1986). "The right of access to documents or materials filed in district court derives from two independent sources: the common law and the First Amendment." *Virginia Department of State Police v. The Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). In general, "the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Id.* If there is a First Amendment right of

5

access to a judicial proceeding or document, the challenged seal must be narrowly tailored to serve a compelling government interest. *In re Washington Post*, 807 F.2d at 390.[1]

"Neither the Supreme Court nor this Court has ever held that the mere filing of a document triggers the First Amendment guarantee of access." *In re Management Systems Corp.*, 1995 WL 541623 (4th Cir. 1995) (unpublished). In fact, "the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. University of Maryland*, 855 F.2d 178, 180 (4th Cir. 1988). In *In re Washington Post*, the Fourth Circuit found a public right of access to criminal plea hearings and to documents filed in connection with criminal plea hearings. 807 F.2d at 390. "Because we conclude that the more rigorous First Amendment standard should apply in this context, we hold that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves." *Id.*

The Supreme Court has not yet ruled on whether the First Amendment right of access applies in civil cases, although most circuit courts have found that the right so applies. *See Huminski v. Corsones*, 386 F.3d 116, 145 (2d Cir. 2004); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004) ("Numerous federal and state courts have also extended . . . First Amendment protection . . . to particular types of judicial documents, determining that the First Amendment itself, as well as the common law, secures the public's capacity to inspect such records."). The Fourth Circuit holds that a First Amendment right of access attaches to documents filed in connection with a summary judgment motion. *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988). In *Rushford*, the appellate court reversed a district court's sealing order, reasoning that the right of access should apply because

---

[1]      The two rights also are reviewed differently on appeal. A district court's denial of access to documents under the common law right is reviewed for abuse of discretion, whereas a First Amendment denial of access is reviewed de novo. *In re Washington Post*, 807 F.2d at 390.

the documents were filed with a summary judgment motion and thus were used to "adjudicate[]

substantive rights" and "serve as substitute for trial." *Id.* at 252-253. Seven years later, in an

unpublished opinion, the Fourth Circuit refused to extend the First Amendment right of access to

documents filed in connection with a motion to dismiss. *In re Management Systems, Inc.*, 1995

WL 541623 (4th Cir. 1995). The court distinguished *Rushford* because documents filed with a

motion to dismiss "retain their status as discovery materials" and thus do not "adjudicate

substantive rights" or "serve as a substitute for trial." *Id.*

Most recently, in a 2004 decision *Virginia Department of State Police*, the Fourth Circuit

confirmed that the public had a First Amendment right of access to documents filed with a

summary judgment motion in a civil rights action. 386 F.3d at 575. The plaintiff had been

incarcerated for rape and murder and later pardoned. *Id.* He brought a civil rights action

challenging his arrest and conviction. The district court had granted a motion to unseal certain

documents relating to the murder. The appellate court held that "a compelling government

interest exists in protecting the integrity of an ongoing law enforcement investigation," but

"whether this general interest is applicable in a given case will depend on the specific facts and

circumstances presented in support of the effort to restrict public access." *Id.* at 579. The court

then conducted a document-by-document analysis of the district court's unsealing orders,

affirming most of them and remanding four documents for further consideration. *Id.* at 579-581.

In summary, it appears that the Fourth Circuit holds that the public has a First

Amendment right of access to documents filed with a summary judgment motion because such

documents are used to adjudicate the parties' substantive rights. *Virginia Department of State

Police*, 386 F.3d at 575; *Rushford*, 846 F.2d at 253. This right of access may not apply to

documents filed with a motion to dismiss. *In re Management Systems*, 1995 WL 541623. This

distinction is logical. In federal civil procedure, a summary judgment motion is the only motion that can "serve as substitute for trial" because it is the only motion where a court may consider evidence. *Rushford*, 846 F.2d at 253; Fed. R. Civ. P. 56.

Under *Rushford*, the question is whether a sealed qui tam complaint adjudicates substantive rights and serves as substitute for trial. 846 F.2d at 252-253. A qui tam complaint filed *in camera* and under seal does not – by itself – adjudicate rights. It sets forth the relator's allegations and relief sought, informs the court of the grounds for jurisdiction, puts the government on notice of the fraud allegations, and initiates the government inquiry into those allegations. Although these things might be important procedural steps under the FCA, they are not the adjudication of substantive rights. Nor does a sealed qui tam complaint serve as a "substitute for trial." Indeed, the adversarial litigation process does not even *begin* until the complaint is unsealed and served on the defendant. For these reasons, the Court holds that under *Rushford* there is no First Amendment right of access to a sealed qui tam complaint.

Plaintiffs urge that the two-prong "experience and logic" test compels a right of access to sealed qui tam complaints.[2] *Baltimore Sun v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *see also In re Washington Post*, 807 F.2d at 389. "The test for determining whether a first amendment right of access is available is: 1) 'whether the place and process have historically been open to the press and general public,' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Goetz*, 886 F.2d at 64 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes.")). In *Goetz*, the Fourth Circuit rejected the Baltimore Sun newspaper's claim of

---

[2]     This Court was unable to find any cases applying the "experience and logic" test to sealed qui tam complaints. Given the broad language in *Goetz*, *i.e.*, "the test for determining whether a first amendment right of access is available is [the experience and logic test]," the Court applies the test here.

8

access to a search warrant affidavit for failure to meet the "experience" prong of the test. 886

F.2d at 64. The court noted that the Supreme Court had rejected several attempts to access

search warrant materials, and emphasized that "the proceeding for issuing a search warrant is

necessarily ex parte, since the subject of the search cannot be tipped off to the application for a

warrant lest he destroy or remove the evidence." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154,

169 (1978)).

Likewise here, the Court finds that neither "experience" nor "logic" justifies creating a

First Amendment right of access to sealed qui tam complaints. The 1986 Amendments created a

procedure whereby the relator must file the qui tam complaint *in camera* and under seal and

serve it on the government. *See Erickson ex rel. U.S. v. Amer. Inst. of Biological Sciences*, 716

F. Supp. 908, 912 (E.D. Va. 1989). For the twenty-three years this procedure has been in

operation so far, no court has found a First Amendment right of access to sealed qui tam

complaints. The processes protected by the seal provisions – the government's investigation and

evaluation of the relator's allegations – are not the type of processes that historically have been

open to the public. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978) ("[t]his Court has never

intimated a First Amendment guarantee of access to all sources of information within

governmental control"). Indeed, the internal workings of these processes are necessarily

shielded from the public eye, as evidenced by the fact that documents compiled during an FCA

investigation are exempt from disclosure under the Freedom of Information Act (FOIA). *See*

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 154-155 (1989).

Moreover, in analogous circumstances where secrecy is prescribed by statute – such as

grand jury proceedings – there is no historical tradition of access to sealed records. *See In re*

*Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) ("Unlike typical judicial proceedings, grand

jury proceedings and related matters operate under a strong presumption of secrecy."); *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979) ("the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings"); *In re Sealed Case*, 151 F.3d 1059, 1069-71 (D.C. Cir. 1998). The FCA's seal provisions are analogous to grand jury proceedings insofar as both are aimed at preserving the integrity of criminal investigations. *Erickson*, 716 F. Supp. at 912; *see also* S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5281 ("in response to Justice Department concerns that qui tam complaints filed in open court might tip off targets of ongoing criminal investigations, the subcommittee adopted a sixty-day seal provision for all qui tam complaints"). Safeguarding the integrity of these investigations requires secrecy, as Congress recognized when it amended the statute in 1986.

The "logic" prong asks whether public access "serv[es] important public purposes," *In re Washington Post*, 807 F.2d at 389, and "play[s] a particularly significant positive role in the actual functioning of the process." *Press-Enterprise II*, 478 U.S. at 11. Plaintiffs claim that public access to all qui tam complaints would promote confidence in the judiciary, educate the public, and enhance the efficient and just resolution of cases. Plaintiffs further argue that complaints are adjudicative documents because they initiate suits, assert the basis for a court's jurisdiction, and are critical to motions to dismiss. As discussed above, a qui tam complaint does not serve any of these functions *until it is unsealed and served on the defendant*, after which the public has complete access. Furthermore, it is highly unlikely that public access to sealed qui tam complaints would enhance the efficient and just resolution of cases. To the contrary, if a qui tam complaint entered the public domain during an ongoing government fraud investigation it could tip off the perpetrators and hamper the investigation. Like the search warrant affidavit at issue in *Goetz*, the initial sixty-day seal contemplated by the FCA is necessary lest "the subject

[of the investigation] be tipped off" and "destroy or remove the evidence." 886 F.2d at 64. To the extent qui tam complaints filed in open court would spoil fraud investigations, it would make government intervention in the FCA action less likely and thereby reduce the number of FCA suits prosecuted. In short, prematurely unsealed complaints could hamper the government's efforts in combating fraud and undermine the FCA. For these reasons, the Court finds that public access to sealed qui tam complaints would not play a "significant positive role" in the process.

Accordingly, the "experience and logic" test does not support a First Amendment right of access to sealed qui tam complaints.

3. The seal provisions are narrowly tailored to serve a compelling government interest.

Under the foregoing analysis, there is no First Amendment right of access to sealed qui tam complaints. Even if such a right existed, however, it would not guarantee public access. This is because the "mere existence of a First Amendment right of access to a particular kind of hearing or document does not entitle the press and public to access in every case." *Washington Post*, 807 F.2d at 390. Even where the First Amendment right applies, a court may restrict access "on the basis of a compelling government interest, and only if the denial is narrowly tailored to serve that interest." *Virginia Department of State Police*, 386 F.3d at 575.[3] As shown below, even if there was a right of access, the Court would dismiss plaintiffs' facial challenge because the FCA's seal provisions are narrowly tailored to serve the compelling government interest of protecting criminal investigations.

---

[3]   "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Id.* (citing *Press-Enterprise Co.*, 478 U.S. 1, 15 (1986)).

There is a compelling government interest in preserving the secrecy of law enforcement investigations into fraud against the government.[4] As the Fourth Circuit recognized in *Virginia Department of State Police*, "a compelling government interest exists in protecting the integrity of an ongoing law enforcement investigation." 386 F.3d at 579. Congress' central motivation in adding the seal provisions to the FCA was to protect the integrity of ongoing criminal investigations. The legislative history of the 1986 Amendments to the FCA is replete with references to this concern. For example, the legislative history explains that:

> The Justice Department asserted that the public filing of overlapping false claims allegations could potentially 'tip off' investigation targets when the criminal inquiry is at a sensitive stage. While the Committee does not expect that disclosures from private false claims suits would often interfere with sensitive investigations, we recognize the necessity for some coordination of disclosures in civil proceedings in order to protect the Government's interest in criminal matters . . .

> Keeping the qui tam complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.

S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5289.

Elsewhere the legislative history affirms that Congress added the sixty-day seal provision "in response to Justice Department concerns that qui tam complaints filed in open court might tip off targets of ongoing criminal investigations." *Id.* at 5281. It further explains that:

> [t]he initial 60-day sealing of the allegations has the same effect as if the qui tam relator had brought his information to the Government and notified the Government of his intent to sue. The Government would need an opportunity to study and evaluate the information in either situation. Under this provision, the purposes of qui tam actions are balanced with law enforcement needs as the bill allows the qui tam relator to both start the judicial wheels in motion and protect his own litigative rights . . . The Committee

---

[4]    The seal provisions also protect the taxpayer by enabling the government to evaluate whether to invest public resources in litigating the FCA action. For the government to make a sound decision on intervention, it must accurately assess the merits of the suit and the veracity of the fraud allegations. Obviously this requires an ability to discreetly assess whether there is an ongoing investigation and determine what, if anything, that investigation has uncovered.

feels that sealing the initial private civil false claims complaint protects both the
Government and the defendant's interests without harming those of the private relator.

*Id.* at 5289.

Given this clear indicia from the legislative history, there can be no question that
Congress' intent in adding the seal provisions was to safeguard ongoing law enforcement
operations – an interest that is compelling under Fourth Circuit law. *Virginia Department of
State Police*, 386 F.3d at 579.

Moreover, the FCA's seal provisions are narrowly tailored to serve this compelling
interest. The essence of narrow tailoring is that the law cannot restrict a right any more than
necessary to promote the compelling objectives. *Goetz*, 886 F.2d at 66. The burden rests on the
government to show narrow tailoring, and the law fails strict scrutiny if there is a plausible, less
restrictive alternative. *See United States v. Playboy Entertainment Group*, 529 U.S. 803, 813-
814 (2000). The Court finds that the sixty-day mandatory seal is a temporary and limited
restriction on access that meets the narrowly tailored requirement. First, the mandatory seal is
limited in duration. Given the complexity of white collar fraud and the limited resources of the
federal agencies tasked with fraud enforcement, sixty days is the minimal amount of time
necessary for the government to conduct its initial review of a qui tam complaint. S. Rep. 99-
345, 1986 U.S.C.C.A.N. 5266, 5272 ("Taking into consideration the vast amounts of Federal
dollars devoted to various complex and highly regulated assistance and procurement programs,
Federal auditors, investigators, and attorneys are forced to make 'screening' decisions based on
resources factors."). Again, the legislative history shows that Congress pondered this question
and deliberately chose the sixty-day time period to allow "Government coordination, review and
decision." *Id.* at 5289-90. This Court has no grounds for second-guessing Congress'
determination of the necessary period of time for an automatic seal.

Furthermore, the FCA provides for judicial review once the automatic seal has expired. To extend the seal the government must move the court for an extension of time and support the motion with affidavits or other material submitted *in camera* showing good cause for the extension. 31 U.S.C. § 3730(b)(3).[5] Congress clearly did not intend this provision to cause long delays in litigation. In the legislative history Congress stated that courts should "carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from the civil complaint or processing of the qui tam litigation." S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5290.

In sum, the seal provisions amount to a temporary restriction on public access followed by judicial review before any extension can be granted. Congress deliberately chose sixty days for the automatic seal to give the government ample time to check on the status of any ongoing criminal fraud investigation, coordinate among implicated federal agencies, and make an intelligent decision on intervention. Accordingly, this Court finds the seal provisions narrowly tailored to serve the compelling government interest in maintaining the integrity of ongoing criminal investigations.

---

[5]     Plaintiffs also argue that the "good cause" standard for extending the initial sixty-day seal does not comport with Fourth Circuit requirements for sealing. Generally, the Fourth Circuit requires that district courts make specific findings on the record and narrowly tailor any seal – where the public has a right of access. *See Rushford*, 846 F.2d at 253-254. But this issue need not be addressed here for two reasons. First, under the foregoing analysis there is no First Amendment right of access to sealed qui tam complaints. Therefore, strict scrutiny and narrow tailoring are not necessary. The lack of a right of access to sealed qui tam complaints distinguishes *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993), and other cases cited by plaintiffs, holding that a showing of good cause does not justify denying public access to trial proceedings. Second, the issue is not ripe because plaintiffs bring a facial challenge to the statute and there has been no opportunity for the Court to extend any seal or make findings on the record.

     Nonetheless, the Court recognizes that "good cause" extensions have produced lengthy delays in some FCA cases, contrary to Congress' intent when it added the seal provisions. *See* S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5290 (courts should "carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from the civil complaint or processing of the qui tam litigation.").

4. There is no common law right of access to a sealed qui tam complaint.

"The common law presumes a right of the public to inspect and copy 'all judicial records and documents.'" *Virginia Department of State Police*, 386 F.3d at 575 (quoting *Stone v. University of Maryland*, 855 F.2d 178, 180 (4th Cir. 1988)); *see Under Seal v. Under Seal*, 1994 WL 283977, at *2 (4th Cir. 1994); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). However, "the common law does not provide as much access to the press and public as does the First Amendment." *In re State-Record Company*, 917 F.2d 124, 127 (4th Cir. 1990). The right is not absolute, *see Level 3 Comm's v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 577 (E.D. Va. 2009), and the common law presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Virginia Department of State Police*, 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.*

Because a qui tam complaint is a pleading filed with the court, it is properly characterized as a judicial document and therefore is subject to a common law presumption of access. *See United States ex rel. Permison v. Superlative Tech., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (analyzing the common law presumption of access where relator sought to have his complaint resealed); *see also Goetz*, 886 F.2d at 63 (rejecting government's argument that a search warrant affidavit filed *ex parte* was not a judicial record). As discussed above, however, the government has a significant and compelling interest in preserving the secrecy of law enforcement investigations into fraud against the government. *See supra.* This interest is significant enough to heavily outweigh the presumption of public access for the reasons

articulated in the prior analysis under the First Amendment. Accordingly, the Court finds that

the common law presumption of access does not warrant unsealing qui tam complaints.[6]

**B.      Challenges to the FCA as a restriction on the speech of relators.**

Plaintiffs argue that the seal provisions amount to a content-based restriction on speech,

which impermissibly gags the relator and thus violates the First Amendment. The Court holds

that plaintiffs lack standing to assert the rights of relators. To the extent plaintiffs claim standing

based upon their derivative injuries as the possible recipients of speech, these injuries are too

speculative and hypothetical to confer standing. Furthermore, the FCA's seal provisions are

neither a content-based restriction on speech, nor a prior restraint.

1. <u>Plaintiffs lack standing to assert the rights of third-party relators not before the Court</u>.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve

his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004). Standing involves "both

constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."

*Id*. at 129 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Generally, a party "must assert

his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties." *Warth*, 422 U.S. at 499; *see also United Reporting*, 528 U.S. at 40-41

("to the extent that respondent's facial challenge seeks to rely on the effect of the statute on

parties not before the Court . . . its claim does not fit within the case law allowing courts to

entertain facial challenges"). "[W]hen standing is challenged on the basis of the pleadings, we

---

[6]     It is somewhat unclear whether plaintiffs argue that the FCA's seal provisions violate the common law presumption of access in addition to the First Amendment right. Generally speaking, courts apply the common law presumption when a party seeks to have a court document sealed or resealed. *United States ex rel. Permison v. Superlative Tech., Inc.*, 492 F. Supp. 2d 561, 563 (E.D. Va. 2007). It is a case-specific inquiry that weighs interests, which is reviewed for abuse of discretion. *In re Washington Post*, 807 F.2d at 390. The common law test seems to be an awkward fit here because plaintiffs bring a facial challenge to the FCA's seal provisions, as opposed to an applied challenge. For the sake of analytical completeness, and because the relevant Fourth Circuit authorities discuss access rights under both the First Amendment and the common law, this Court weighs the interests and finds the common law presumption overridden by the compelling public interest in protecting criminal fraud investigations.

accept as true all material allegations in the complaint, and construe . . . the complaint in favor of the complaining party." *Pennel v. City of San Jose*, 485 U.S. 1, 17 (1988) (internal quotes omitted).

The standing inquiry is somewhat relaxed in the First Amendment context. "In several cases, this Court has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski*, 543 U.S. at 130 (citing *Warth*, 422 U.S. at 510).[7] A party may assert the rights of a third party if it makes two showings. *Kowalski*, 543 U.S. at 130. First, the party must demonstrate a "close relationship" with the person possessing the right; second, there must be a "hindrance" that prevents the third party from protecting its own interests. *Id.* Plaintiffs here cannot show either a close relationship or a hindrance. Far from a showing of a "close relationship" with relators, plaintiffs have not alleged any type of relationship. As the amicus curiae point out, plaintiffs have not identified any specific FCA case in which the ACLU, OMB Watch, or GAP has participated. Further, the injunctive relief sought would run counter to the interests of some relators by forcing disclosure of their fraud allegations – and their identities. Second, there is no "hindrance" to relators asserting their own rights. Nothing prevents a relator aggrieved by the seal provisions from raising his or her own constitutional challenge. Any relator who believes his speech is gagged by the seal provisions is free to assert his own rights in the district court where he filed the qui tam action.[8]

---

[7]     This is not to be confused with the *public*'s standing to assert right of access challenges based on the First Amendment and common law. As members of the public, plaintiffs clearly have standing to seek redress for an alleged infringement of their First Amendment rights to access a sealed qui tam complaint.

[8]     Practically speaking, of course, some relators might be unwilling to challenge the seal provisions, which protect their interests by ensuring their anonymity and the secrecy of their allegations until the government has decided whether to intervene. Such secrecy may be welcome, particularly where relators allege fraud against an entity with which they have a continuing relationship like an employer, prime contractor, or business partner.

Lacking standing to assert the rights of third-party relators, plaintiffs claim derivative standing based upon their own alleged injury – an inability to communicate with relators allegedly gagged by the FCA's seal provisions. They rely on cases where courts found that the *recipients* of speech had standing to challenge government suppression of a willing speaker. *See, e.g., FOCUS v. Allegheny County Court*, 75 F.3d 834, 839 (3d Cir. 1996) (plaintiffs had standing to challenge confidentiality order because order gagged willing speaker from communicating with plaintiffs); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) ("We have routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings."). These cases, however, are readily distinguishable. *FOCUS* involved a constitutional challenge – brought by a citizen's advocacy group and two of its individual members – to a gag order issued by a state court that prohibited the plaintiffs from obtaining information about a high profile child custody case. 75 F.3d at 838. Surveying the caselaw, the Third Circuit observed that "courts have found that third parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order *is willing to speak and is being restrained from doing so.*" *Id.* at 839 (emphasis added) (collecting cases).

Here, by contrast, there is no "willing" speaker being restrained by court order. Plaintiffs' asserted injury – an inability to receive information from supposedly gagged relators – is both speculative and hypothetical. *Kowalski*, 543 U.S. at 130. Plaintiffs bring a facial challenge to the statute, after all, not an "as applied" challenge based upon any actual suppression of speech. There is no specific relator claiming that the seal provisions infringe his speech. This distinguishes this case from *FOCUS* and similar cases where a court-issued gag order is clearly preventing a willing speaker from communicating with the plaintiffs. Without a

18

"willing speaker" presently restrained from speaking, plaintiffs cannot show an injury in fact as the supposed recipient of that speech. *FOCUS*, 75 F.3d at 838 ("plaintiffs still must show that the gag orders have caused them injury in fact and that their injury is likely to be redressed by a favorable decision").

Furthermore, the FCA's seal provisions only become relevant *after* a relator makes an affirmative choice to file a qui tam action. Any potential relator is free to speak publicly about the fraud instead of pursuing qui tam litigation, in which case the seal provisions never operate at all. Thus, plaintiffs' alleged inability to communicate with relators is directly and proximately caused by those relators' voluntary decision to seek legal remedy under the FCA rather than talk to the press. The fact that a relator must elect to file a qui tam complaint before the seal becomes relevant further distinguishes this case from those where government action has silenced speakers against their will. *FOCUS*, 75 F.3d at 837.

Accordingly, the Court holds that these plaintiffs do not have standing to challenge the FCA as a restriction on speech.

2. The FCA's seal provisions are not a content-based restriction on speech, nor are they a prior restraint on speech.

Even if plaintiffs had standing, the Court would dismiss the complaint because the seal provisions are neither a content-based restriction on speech nor a prior restraint on speech. The statute does not directly "gag" or suppress speech – the seal merely prevents the existence of a qui tam suit from being publicly disclosed. No language in the FCA restricts what the relator may say, much less restricts any specific content. There is nothing in the FCA preventing a relator from speaking to the ACLU, OMB Watch, GAP, or anyone else about the facts underlying the fraud allegations. To be sure, a decision to speak publicly about fraud allegations

19

after filing a qui tam action could cause the case to be dismissed and thereby cost the relator his share of any FCA recovery, *see United States ex rel. Pilon v. Martin Marietta*, 60 F.3d 995, 997 (2d Cir. 1995). But, unlike a typical gag order or prior restraint, the FCA does not provide for civil or criminal sanctions for a relator who speaks publicly about the factual allegations. As such, this Court concludes that the seal provisions do not prohibit relators from disclosing facts underlying the alleged fraud to the press or the general public.[9]

Indeed, to expansively interpret the seal provisions as a gag on speech likely would be unconstitutional under a line of Supreme Court cases holding that the government cannot prevent individuals from publicly disclosing lawfully-obtained information. *See United States v. Aguilar*, 515 U.S. 593, 605 (1995); *Bartnicki v. Vopper*, 532 U.S. 514, 533-534 (2001). The well-established doctrine of constitutional avoidance therefore counsels against reading the FCA so broadly. *United States v. Locke*, 471 U.S. 84, 92 (1985) (courts should "not pass on the constitutionality of an Act of Congress if a construction of the Act is fairly possible . . . by which the constitutional question can be avoided").

Plaintiffs urge the Court to follow *Baugh v. Judicial Inquiry & Review Comm'n*, 907 F.2d 440 (4th Cir. 1990), and find that the FCA seal provisions are a content-based restriction on speech. *Baugh* is distinguishable because it involved a complete statutory ban on all speech relating to proceedings before a Judicial Inquiry and Review Commission. *Id.* at 442 ("All papers filed with and proceedings before the Commission . . . shall be confidential and shall not be divulged . . . by any person [involved in the proceedings]"). Additionally, the statute made a violation a misdemeanor criminal offense. *Id.* By contrast, the FCA seal provisions do not completely ban speech or provide a criminal penalty for a violation of the seal. At most, a relator

---

[9]     The Court also notes that this interpretation of the statute is supported by the *amici* Taxpayers Against Fraud (TAF), a special interest organization that frequently represents the institutional interests of relators as a group.

who violates the seal and discloses the existence of the qui tam lawsuit might lose entitlement to his statutory share of any recovery. *Pilon*, 60 F.3d at 997. Further, because *Baugh* involved a direct constitutional challenge by persons threatened with criminal prosecution, there was no question that the plaintiffs had standing. Here, as discussed, plaintiffs have no concrete or imminent injury in fact.[10]

In sum, the FCA's seal provisions do not prohibit speech, but merely impose a temporary seal restricting a relator from disclosing the existence of the qui tam action and, by logical extension, any related investigation. These narrow restrictions do not attach in a vacuum, but rather are voluntarily invoked by a relator when he files a qui tam complaint. There is no civil or criminal mechanism for punishing a violation of the seal. As such, the seal provisions are categorically different from a protective order, statute, or regulation directly prohibiting speech by willing speakers. For these reasons, and for lack of standing, the Court hereby rejects plaintiffs' challenge.

## C.   Separation of powers.

Plaintiffs argue that "the FCA's secrecy scheme infringes on a court's inherent authority to decide on a case-by-case basis whether a particular FCA action should be hidden from public scrutiny and thus violates the separation of powers." The separation of powers can be violated in two basic ways. The first is where one branch of government is aggrandized at the expense of another, such as where "Congress impermissibly restrains the power to control the removal of Executive Branch officials." *Morrison v. Olson*, 487 U.S. 654, 680 (1987). The second is where

---

[10] Even if the FCA's seal provisions were subject to strict scrutiny under *Baugh*, they would pass constitutional muster because they are narrowly tailored to serve a compelling government interest in preserving the integrity of ongoing law enforcement investigations. *See supra* (discussion under First Amendment right of access). In brief, the complaint is sealed for only sixty days, an extension of the seal requires judicial review, and the seal does not prohibit relators from discussing the facts underlying the complaint.

a law "disrupts the proper balance between the coordinate branches by prevent[ing] [one of the branches] from accomplishing its constitutionally assigned functions." *Id.* (internal citations and quotations omitted).

Only the second theory is at issue here. Plaintiffs argue that separation of powers requires that federal courts be able to make determinations based on specific facts on a case-by-case basis. Plaintiffs rely on a Fifth Circuit case, *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993), which observed in dicta that "Congress may not interfere with a court's inherent power to decide cases by dictating the result in a particular case." *In re Stone* reviewed a district court's issuance of a standing order requiring the federal government to send a representative with actual settlement authority to appear at settlement conferences. *Id.* It does not apply here. The FCA does not dictate any result or outcome, nor does it usurp the judiciary's core function of deciding cases on a case-by-case basis. To the contrary, after the initial sixty day period a court must review the seal and extend it only "for good cause shown." 31 U.S.C. § 3730(b)(3). As such, there is case-by-case judicial review built into the statutory scheme.[11]

Nor does the initial sixty-day automatic seal "disrupt the proper balance between the coordinate branches" of government. *Morrison*, 487 U.S. at 680. The FCA merely requires the Clerk of Court to place the qui tam complaint and docket under seal. This is a "ministerial" act, and ministerial acts do not violate separation of powers. In *Morrison*, the Supreme Court rejected an argument that ministerial powers granted to a Special Division of the D.C. Circuit by the Ethics in Government Act violated separation of powers. 487 U.S. at 680-681. Article III contains a "broad prohibition upon the courts' exercise of 'executive or administrative duties of a nonjudicial nature,'" but this prohibition does not embrace the docketing of sealed filings. *Id.* at

---

[11]     It is also worth noting that the more stringent seal provisions contained in Federal Rule of Criminal Procedure 6(e), relating to grand jury proceedings, do not contain any mechanism for judicial review and yet do not violate separation of powers.

681. Court clerks place documents under seal every day, and this is not an executive duty of a "nonjudicial nature," but rather a fundamental task of the judiciary. *Id.* at 681 n.20 ("we also note that federal courts and judges have long performed a variety of functions that, like the functions involved here, do not necessarily or directly involve adversarial proceedings within a trial or appellate court").

Plaintiffs also argue that the mandatory seal impermissibly places a judge in a "clerical" role, rather than a judicial role, while the initial seal is in place. *U.S. ex rel. Navarette*, 661 F. Supp. 506, 507 (D. Colo. 1987). In dicta, the *Navarette* court mused that a statute requiring a judge to sign and execute an order might violate separation of powers. *Id.* at 506-507 ("Further, the signing of an order without deliberation merely because a statute suggests a certain procedure is mandatory is at best a clerical act, not a judicial one. Under the separation of powers doctrine, I do not believe the legislature can or should attempt to require judges to perform non-judicial acts."). The FCA seal provisions do not require that a judge perform a non-judicial act or sign any order without deliberation.

For these reasons, the Court holds that the FCA's seal provisions do not violate separation of powers.

## III.    Conclusion.

For the reasons stated above, defendants' motion is granted and the Court hereby dismisses plaintiffs' complaint. An appropriate order shall issue forthwith.

/s/ _____

Liam O'Grady
United States District Judge

August 21, 2009
Alexandria, Virginia